

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CHARLES COLLINS AND LINDA COLLINS, | § | No. 08-17-00213-CV |
| | § | |
| Appellants, | | Appeal from the |
| | § | |
| v. | | County Court at Law No. 3 |
| | § | |
| CESAR VIVANCO, M.D., | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2014DCV2729) |
| | § | |

**O P I N I O N**

This is an appeal from a take-nothing judgment in a medical malpractice suit brought by Appellants Charles and Linda Collins[1] against Appellee Cesar Vivanco, M.D.   Collins asserts that the evidence is legally insufficient to support the jury's failure to find that Dr. Vivanco's negligence proximately caused his injury.   We affirm.

**I.  BACKGROUND**

Dr. Shanker Sundrani, a neurosurgeon, performed surgery on Collins' neck on November 14, 2013.   By 3 p.m. that afternoon, Collins was exhibiting symptoms possibly indicating spinal compression.   At 4:30 p.m., hospital staff notified Dr. Sundrani that Collins was experiencing

---

[1] Depending on the context, we will use "Collins" to refer to Charles Collins, individually, and to Charles and Linda Collins, collectively.

numbness. By 5:49 p.m., he was experiencing weakness in his extremities. Hospital staff called Dr. Sundrani again at 11:10 p.m. to inform him of Collins' condition. Nurses' notes for 8 a.m. the following morning state that Collins was experiencing weakness, tingling, and numbness. While Collins told them he was paralyzed, the nurse noted he had some movement of his extremities but could not grip.

Dr. Vivanco is an internist who was engaged, at Dr. Sundrani's request, as a consulting physician to manage Collins' preexisting hypertension and diabetes while he was in the hospital. Dr. Vivanco first saw Collins, at his bedside, on November 15, 2013, at approximately 8:45 a.m. His examination of Collins revealed severe weakness in his extremities and decreased grip strength, among other findings. Dr. Vivanco told nurse Diana Montanez that he needed to speak to Dr. Sundrani. His need to involve the attending physician was particularly significant because he understood that Collins had undergone surgery on his spine hours earlier and testing would imply movement of the patient which could imply risk for the patient. Dr. Vivanco wanted to know whether Dr. Sundrani would accept a recommendation to proceed with a CT of Collins' neck. If any further surgery were required, it would have to be performed by Dr. Sundrani, not by Dr. Vivanco.

The two made several attempts to call Dr. Sundrani, who did not respond. Dr. Vivanco waited approximately fifteen minutes but then left to attend to other patients. Before leaving, he told Montanez to tell Dr. Sundrani about Collins' weakness, numbness, and tingling, and to relate that he was concerned and recommended that a CT scan be performed that morning. He also told the nurse to tell Dr. Sundrani to call him if he had any questions or wanted to talk to him. In addition, Dr. Vivanco's notes were transcribed into the hospital's computerized records, which

2

were available to Dr. Sundrani, at 9:19 a.m.

Dr. Sundrani called back at approximately 10:30 a.m. and spoke to Montanez. Her note of that call states, "Spoke with Dr. Sundrani regarding patient. Notified again of uncontrolled pain. Weakness, numbness, tingling, spasms, and loss of grip as notified during night shift. New orders obtained. Notified of Dr. Vivanco's concern and recommendation of a CT scan. No CT scan at this time. Continue with Decadron[2] and PT/OT.[3]" Montanez testified that Dr. Sundrani told her that he would be coming to the hospital to assess the patient himself. Dr. Sundrani again called the hospital concerning Collins at 12:57 p.m. and 9:04 p.m. on November 15, but he did not come in that day to see Collins.

By 4 a.m. the following day, Collins had no feeling in his legs. By 7 a.m., he was unable to wiggle his fingers or toes. At 10:43 a.m., a nurse called Dr. Sundrani, who ordered a CT scan. Shortly thereafter, Dr. Sundrani called back to cancel the CT scan and ordered an MRI instead. After receiving the imaging results, Dr. Sundrani performed a second surgery on Collins that afternoon to remove a hematoma that had compressed his cervical spine. As a result of that compression, Collins suffered quadriparesis, meaning weakness in all four limbs.

Collins sued Dr. Vivanco, Dr. Sundrani, and other medical providers. By the time of trial, however, he had amended his petition to name only Dr. Vivanco as a defendant.[4] Collins alleged that Dr. Vivanco was negligent in choosing not to confer with Dr. Sundrani, failing to timely order diagnostic tests, failing to consult with a neurosurgeon or neurologist, failing to develop a

---

[2] Decadron is used to reduce inflammation.

[3] PT/OT stands for physical therapy and occupational therapy.

[4] The record indicates that the Collins entered into a settlement agreement with Dr. Sundrani.

differential diagnosis to determine the cause of Collins' condition, and failing to facilitate surgery to relieve the pressure on Collins' spine. But the focus of the trial, and the only theory of liability at issue in this appeal, was Collins' claim that Dr. Vivanco was negligent in choosing not to confer with Dr. Sundrani.

The case was tried to a jury, which returned a negative answer to the sole liability issue. The trial court entered a take-nothing judgment on the jury's verdict. Collins filed a motion for new trial arguing that the evidence established as a matter of law that Dr. Vivanco breached a nondelegable duty. That motion was overruled by operation of law and this appeal followed.

## II. DISCUSSION

Collins raises a single issue on appeal, in which he asserts that the evidence conclusively establishes Dr. Vivanco's liability. Specifically, Collins contends that Dr. Vivanco had a nondelegable duty to speak directly with Dr. Sundrani about Collins' condition. Collins contends that Dr. Vivanco breached that duty by having a nurse relay his concerns to Dr. Sundrani, and that breach proximately caused Collins to suffer quadriparesis.

### A. Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). It is well-established that "[j]urors are the sole judges of the credibility of the witnesses and the weight to give their testimony," and that it is the province of the jury to resolve any conflicts presented by the evidence. *Id.* at 819, 820. For this reason, a court reviewing the sufficiency of the evidence "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827.

4

In the context of a legal sufficiency challenge to an adverse finding on an issue on which the complaining party had the burden of proof, the reviewing court must uphold the finding unless the evidence establishes every vital fact in support of the issue, as a matter of law. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). This involves a two-step inquiry, whereby the court first examines the record to determine whether there is any evidence supporting the finding, disregarding all evidence to the contrary. *Francis* 46 S.W.3d at 241. Only if there is no such supporting evidence must the court review the entire record to determine whether the contrary proposition is established as a matter of law. *Id.*

## B. Collins' theory of liability

A medical malpractice plaintiff bears the burden of proving "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019) (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)). Establishing a breach of a duty requires proof of the applicable standard of care, which is defined as "what a doctor of ordinary prudence in that particular field would or would not have done under the circumstances." *Id.*

Collins contends that Dr. Vivanco owed a nondelegable duty to speak directly to Dr. Sundrani about Collins' condition, and that he breached that duty by having nurse Montanez call Dr. Sundrani instead. As noted by Dr. Vivanco,

> Collins's nondelegable duty assertion could encompass two distinct legal theories: 1) that Dr. Vivanco remains vicariously responsible under the legal doctrine of nondelegable duty for the actions he delegated to Nurse Montanez, or, 2) that the standard of care required Dr. Vivanco to have a doctor-to-doctor conversation about Collins with Dr. Sundrani. Collins's cited authorities tend to implicate the former theory, while his factual arguments tend to implicate the latter.

5

We agree and, consequently, will address each theory in turn.

### 1. Nondelegable duty

Collins contends that Dr. Vivanco is liable for the breach of a nondelegable duty. Collins did not, however, assert the existence of any nondelegable duty in his pleadings or at trial, nor did he request that the breach of any such duty be submitted to the jury. Rather, it appears that Collins' first mention of any nondelegable duty was in his motion for new trial. The issue is thus not preserved for our review. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 393 (Tex. 1997) (nondelegable duty issue waived where not submitted to jury). In any event, Collins' argument lacks merit.

A nondelegable duty is one that is "imposed by law on the basis of concerns for public safety[.]" *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 795 (Tex. 2006). One who bears a nondelegable duty cannot escape it by delegating the duty to another person. *Id.* If he does assign to another the responsibility for performing such a duty, he "remains liable for any negligence in the performance of that duty." *Thomas v. Harris Cty.*, 30 S.W.3d 51, 57 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see Sanchez v. MBank of El Paso*, 792 S.W.2d 530, 532 (Tex. App.—El Paso 1990), *aff'd sub nom. MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151 (Tex. 1992). Thus, liability for breach of a nondelegable duty is vicarious rather than direct. *McAllen Hosps., L.P. v. Gonzalez*, 566 S.W.3d 451, 457 n.3 (Tex. App.—Corpus Christi 2018, no pet.).

Nondelegable duties may be imposed by the legislature or, in limited circumstances, by the courts. *See Central Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 652 (Tex. 2007) (rejecting nondelegable duty argument in circumstances where neither legislature nor courts had imposed

6

such duty). Collins has not identified, nor have we found, any statute or case law imposing on a consulting physician a nondelegable duty to give an attending physician information about a patient's condition by having a direct physician-to-physician conversation.[5] We decline to create such a nondelegable duty in the first instance. Collins has failed to establish the threshold element of his nondelegable duty claim—the existence of any such duty.

In addition, holding Dr. Vivanco vicariously liable for Montanez's negligence in informing Dr. Sundrani about Collins' condition would require some evidence that Montanez was, in fact, negligent. There is no such evidence in the record. On the contrary, not only did no witness criticize Montanez's performance, Dr. Vivanco testified that she did an "excellent job" and related Collins' symptoms and Dr. Vivanco's own concerns to Dr. Sundrani "perfectly."

Collins' assertion that Dr. Vivanco is vicariously liable under a nondelegable duty theory is overruled.

## 2. Breach of the standard of care

We again note that it is Collins' burden to show that the record conclusively establishes that Dr. Vivanco breached the applicable standard of care. *See Bradberry*, 526 S.W.3d at 480; *Francis*, 46 S.W.3d at 241. Collins cannot sustain that burden, though, because the record contains evidence that Dr. Vivanco met the applicable standard of care. *See Francis*, 46 S.W.3d at 241.

Dr. David Wright testified that Dr. Vivanco met the standard of care by trying to speak

---

[5] Collins cites a dissenting opinion in *Kelley v. Marlin*, 714 S.W.2d 303 (Tex. 1986), for the proposition that one "class" of nondelegable duties is "duties which involve a close personal relationship such as duties owed by an attorney to his client, or a physician to his patient." *Id.* at 308 (Wallace, J., dissenting). But even if this dissenting opinion had any precedential value, it is of no assistance in this case because (1) it concerns nondelegable duties in the context of a contract claim; and (2) it does not recognize as nondelegable the specific duty here at issue—the duty to have a physician-to-physician conversation. *See id.*

7

with Dr. Sundrani and waiting a reasonable period of time for Dr. Sundrani to respond before leaving to attend to other patients. Dr. Wright further testified that it was appropriate to have a nurse relay the information to Dr. Sundrani, and that it was also appropriate for doctors to communicate in writing, which Dr. Vivanco accomplished by having his notes transcribed into the hospital's computer system.

In addition, Collins' own expert, Dr. Steven Zell, ultimately agreed that Dr. Vivanco satisfied the standard of care. Dr. Zell first testified that the standard of care required that Dr. Vivanco have a direct telephone conversation with Dr. Sundrani while Dr. Vivanco was at Collins' bedside so that he could explain the situation and convey his concerns about Collins' condition. He opined that Dr. Vivanco did not comply with the standard of care concerning communication with Dr. Sundrani.

On cross-examination, however, Dr. Zell acknowledged that he had not been told that Dr. Sundrani called back within an hour of Dr. Vivanco's attempts to reach him, and that Dr. Sundrani informed nurse Montanez at that time that he would be coming into the hospital. He agreed that, had he known this information, he would not have been critical of Dr. Vivanco in relation to his communication with Dr. Sundrani.

There is evidence in the record from which the jury could reasonably have concluded that Dr. Vivanco did not breach the standard of care. This conclusion alone is fatal to Collins' medical malpractice claim. *See Windrum*, 581 S.W.3d at 768 (breach of applicable standard of care is essential element of medical malpractice claim). For this reason, we uphold the jury's adverse finding on liability without addressing the evidence concerning proximate cause and damages. *See Francis*, 46 S.W.3d at 241 (upholding finding if supported by any evidence).

8

Collins' sole issue on appeal is overruled.

## III.    CONCLUSION

The jury's adverse finding on liability is supported by legally sufficient evidence.    The judgment of the trial court is affirmed.


GINA M. PALAFOX, Justice

April 30, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.